IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-601-FL

| | | |
|---|---|---|
| JACKIE BOUNDS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | ORDER |
| TOWN OF RED SPRINGS, | ) ) ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss for failure to state a claim (DE 13). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is denied.

## STATEMENT OF THE CASE

Plaintiff commenced this employment discrimination action on November 12, 2020, against his former employer, defendant, asserting violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Plaintiff seeks damages in the form of back pay, front pay, compensatory, punitive, and liquidated damages, interest, and costs and fees.

Plaintiff filed the operative amended complaint, as a matter of course, on March 29, 2021, asserting the same claims with additional factual allegations.[1] Defendant filed the instant motion to dismiss shortly thereafter. Plaintiff responded in opposition and defendant replied.

---

[1] Upon plaintiff filing amended complaint as of right, the court denied as moot an earlier motion to dismiss filed by defendant, and scheduling conference activities have been stayed in this case since the filing of that earlier motion.

# STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows.[2] Plaintiff began working for defendant as a water treatment plant operator in September 2007. Years later, in May 2018, plaintiff was diagnosed with bladder cancer. To treat the cancer, he underwent chemotherapy and surgery, which resulted in his using "an ostomy bag to collect bodily waste." (Compl. ¶ 17).

After his cancer treatment, plaintiff took six weeks of Family and Medical Leave Act leave, returning to work on January 8, 2019. Soon after, Timothy Maudlin ("Maudlin"), the public service director of defendant, informed plaintiff that his peers "were complaining about the smell from his ostomy bag" and "that if [p]laintiff did not fix the issue, he would be terminated." (Id.). This caused plaintiff to meet with Jeffery Maynor ("Maynor"), the water treatment plant supervisor and plaintiff's direct supervisor. Maynor informed plaintiff that he had not complained to Maudlin about the ostomy bag and that defendant wanted to terminate plaintiff while he was on leave because "he was a 'liability.'" (Id. ¶ 22).

In May 2019,[3] on the direction of Maynor, plaintiff switched job responsibilities with another employee, beginning to mow grass rather than cut weeds. Allegedly, this change was made because mowing grass was safer and less physically demanding. In that same month, Maudlin "wrote up" plaintiff for switching job responsibilities, although Maynor and the other involved employee were not disciplined. (Id. ¶ 26). Later, in June, plaintiff met with Maudlin, Maynor, and David Ashburn ("Ashburn"), the town manager. The complaint alleges that Ashburn informed plaintiff that plaintiff was "going to get hurt on the job and cost [d]efendant a lot of money." (Id. ¶ 31). Ashburn is alleged

---

[2] Hereinafter, all references to the complaint or "Compl." in citations are to the operative amended complaint (DE 12).

[3] Plaintiff references 2020 as the operative year, but context indicates that this is a typographical error, as does plaintiff's response to the instant motion. (Pl.'s Resp. (DE 15) at 2 n.1).

2

to have further reminded plaintiff that he, at the age of 66, was eligible to retire, although plaintiff explained he wanted to work until he was 70. Plaintiff was told, by Maynor, "that he should continue performing his work the same way." (Id. ¶ 34).

Subsequently, in July 2019, plaintiff received another written warning allegedly for not cutting the weeds. At that time, Maudlin informed plaintiff that he could either resign or be terminated. In the lead up to this conversation, plaintiff was informed by Maynor, his direct supervisor, that Maynor was satisfied with plaintiff's work performance. After plaintiff ceased employment with defendant, he allegedly was replaced by an individual under the age of 40.

**COURT'S DISCUSSION**

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.  Analysis

    1.  ADA

Defendant argues that plaintiff's ADA claim must be dismissed for failure to allege sufficient facts and on the basis of an alternative explanation for defendant's alleged conduct that renders the claim implausible. The court disagrees.

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The ADA protects an employee against discrimination by an employer if the employee is 'a qualified individual with a disability.'" Pollard v. High's of Balt., Inc., 281 F.3d 462, 467 (4th Cir. 2002) (quoting 42 U.S.C. §§ 12111(2), 12112(a)).

At this stage in the litigation, "a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012). Instead, to state a claim for disability discrimination, plaintiff must allege sufficient facts to satisfy the elements of an ADA cause of action, cf. McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015), meaning he must plausibly allege that "(1) that []he has a disability, (2) that []he is a 'qualified individual' for the employment in question, and (3) that [his] employer discharged h[im] (or took other adverse employment action) because of h[is] disability." See Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 572 (4th Cir. 2015) (emphasis added) (quotations omitted); Craddock v. Lincoln Nat. Life Ins. Co., 533 F. App'x 333, 336 (4th Cir. 2013) (per curiam).

Here, plaintiff has alleged facts sufficient to raise a right to relief under the ADA above the speculative level. Plaintiff alleges that he is disabled by dint of his bladder cancer, which his use of

4

the ostomy bag is a result of and incident to, a conclusion defendant does not challenge. And the "constructive discharge" alleged by plaintiff, that is "an allegation that the employer made the employee's working conditions so intolerable that she was forced to quit her job," "may constitute an adverse employment action," Lacasse v. Didlake, Inc., 712 F. App'x 231, 239 (4th Cir. 2018), which defendant, too, does not contest.

As to whether plaintiff was a "qualified individual," statutorily, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 1211(8). Here, taking plaintiff's factual allegations as true and viewing them in the light most favorable to plaintiff, he has pleaded sufficient facts as to raise a reasonable inference that he was a qualified individual. Plaintiff asserts that he was told to change the function of his position, changing from weed-cutting to mowing grass. (Compl. ¶ 24). He alleges, and supports beyond bare factual assertion, that he did so satisfactorily. (See, e.g., id. ¶ 38). The complaint does not describe a factual scenario where plaintiff was failing to meet the requirements of his position, but rather, one where he was completing the task assigned him by his supervisor and was punished for completing that task due to either a miscommunication between that supervisor and others or because of discriminatory animus. (See id. ¶¶ 22, 24-25, 27-29, 34-35). Plaintiff's complaint thus sufficiently alleges facts to support the inference that he was a qualified individual within the meaning of the ADA.

Finally, plaintiff's complaint contains sufficient factual allegations to claim, plausibly, that the relevant adverse employment action was because of his disability. The reasonable inference arising from the facts alleged in the complaint is that plaintiff's disability was at the forefront of the relevant decisionmakers' minds and was viewed as a negative characteristic. (See id. ¶ 18 ("Maudlin . . . told [p]laintiff that . . . if [p]laintiff did not fix [the smell from his ostomy bag], he would be

5

Case 5:20-cv-00601-FL   Document 17   Filed 01/03/22   Page 5 of 11

terminated."), ¶ 22 (asserting that plaintiff's employer considered him a "liability")). Plaintiff alleges that the employee with whom plaintiff switched job responsibilities, who is not disabled, was not disciplined as a result of completing his newly assigned role, although plaintiff was. (Id. ¶¶ 27-29); see, e.g., Craddock, 533 F. App'x at 337 (explaining that, as relevant to the plausibility of her disability discrimination claim, plaintiff alleged that "all non-disabled employees in her department received a form of training . . . that she did not," which was used to justify not re-hiring her); see also McCleary-Evans, 780 F.3d at 586 ("While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is consistent with discrimination, it does not alone support a reasonable inference that the decisionmakers were motivated by bias." (original emphasis omitted) (emphasis added)). Taken together, and viewing the complaint as a whole, these assertions raise a reasonable inference that plaintiff's disability was a basis for his constructive termination.

Therefore, plaintiff has pleaded facts that push his claim past "the line between possibility" and into the realm of "plausib[le] . . . entitlement to relief," relying on more than a "formulaic recitation" of the necessary elements. Iqbal, 556 U.S. at 678.

However, defendant argues plaintiff's claim fails as a matter of law because he was not meeting the legitimate expectations of his employer at the time of the adverse employment action. It argues that plaintiff's complaint "shows that he could not do his assigned tasks, proving on its face that [p]laintiff was not meeting [defendant's] expectations." (Def.'s Mem. (DE 14) at 5). Defendant's argument misconstrues the complaint and the applicable pleading standard.

To the extent defendant asserts that plaintiff's claim must fail because the complaint does not evidence an element of a prima facie claim for ADA discrimination, namely, fulfillment of an "employer's legitimate expectations at the time of discharge," (Def.'s Mem. (DE 14) at 4 (quoting Reynolds v. Am. Nat. Red Cross, 701 F.3d 143, 150 (4th Cir. 2012))), defendant relies upon an

6

"evidentiary standard," rather than "a pleading requirement." Craddock, 533 F. App'x at 336; see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 515 (2002) ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss."). While plaintiff must "allege facts to satisfy the elements of" the relevant statutory "cause of action," "requiring a plaintiff to plead a prima facie case" is "erroneous." McCleary-Evans, 780 F.3d at 584-585.

Moreover, insofar as defendant's argument may be construed as challenging the "plausibility of inferring discrimination based on [plaintiff's] allegations in light of an 'obvious alternative explanation' for the" adverse employment action, see, e.g., Woods v. City of Greensboro, 855 F.3d 639, 649 (4th Cir. 2017), it, too, fails as the court is "not persuaded that [plaintiff] pled h[im]self out of the very claim []he sought to assert," as defendant declares. Craddock, 533 F. App'x at 335. Defendant's assertion that the complaint evidences that "by May 28, 2019, . . . Maudlin[] was not allowing Public Works employees to switch tasks with other employees" mischaracterizes the assertions of the complaint and does not constitute "constru[ing] these facts in the light most favorable to the plaintiff." Nemet, 591 F.3d at 255. The complaint, in fact, raises a reasonable inference that plaintiff continued to be directed to mow grass rather than cut weeds and that this was considered satisfactory work performance by his direct supervisor. (See Compl. ¶¶ 34, 38).

The complaint's allegations, taken as true, raise the reasonable inference that plaintiff had been directed to switch his work responsibilities and that he was then punished for doing so while other non-disabled employees were not. These actions occurred in the broader context of a relevant decisionmaker informing plaintiff that he would be fired for a consequence of his disability if plaintiff did not correct the perceived disability-related nuisance. In light of this, and under the proper standard of review demanded the Federal Rules of Civil Procedure, defendant's explanation of

discipline issues as the cause for plaintiff's firing is not "so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that it renders [plaintiff's] claim of pretext implausible." Woods, 855 F.3d at 649.

In sum, defendant's arguments in support of dismissal of plaintiff's ADA claim are unavailing. Therefore, defendant's motion to dismiss in this part is denied.

2. ADEA

The ADEA "prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age because of the person's age." EEOC v. Baltimore County, 747 F.3d 267, 272 (4th Cir. 2014). However, again, at this stage, plaintiff "is not required to plead a prima facie case of [age] discrimination, but he must 'allege facts to satisfy the elements of a[n] [ADEA] cause of action.'" Tickles v. Johnson, 805 F. App'x 204, 207 (4th Cir. 2020) (per curiam) (quoting McCleary-Evans, 780 F.3d at 585). And the elements of such a cause of action are that "the plaintiff is (1) over the age of 40, and (2) experienced discrimination by an employer (3) because of his age." Tickles, 805 F. App'x at 207.

Here, the complaint contains sufficient factual matter to make plausible plaintiff's claim that he was over the age of 40 and experienced discrimination by defendant because of his age. It is not in dispute that plaintiff is over the age of 40 nor is it in dispute that the alleged constructive discharge is an actionable adverse employment action. See, e.g., Alba v. Merrill Lynch & Co., 198 F. App'x 288, 294 (4th Cir. 2006); Burns v. AAF-McQuay, Inc., 96 F.3d 728, 733 (4th Cir. 1996). Instead, the parties dispute whether the complaint makes plausible the claim that plaintiff suffered adverse employment action because of his age.

The facts alleged in the complaint raise a reasonable inference that plaintiff's putative constructive discharge was caused by assumptions regarding his abilities because of his age, "the very

8

essence of age discrimination." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610-11 (1993) ("It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age . . . . The employer cannot rely on age as a proxy for an employee's remaining characteristics, such as productivity."). The repeated alleged assumption that plaintiff was more likely to injure himself, with a reasonable inference drawn that this assumption was based upon plaintiff's age, (see, e.g., Compl. ¶¶ 22, 25, 31-32), is the kind of "stereotypical assumption[] that the ADEA sought to eradicate." Kentucky Ret. Sys. v. E.E.O.C., 554 U.S. 135, 146 (2008). The alleged comments were not made in isolation but in conjunction with discussion of terminating plaintiff, the necessity that he cease his employment, or the job-role retasking that contributed to the end of plaintiff's employment. (See, e.g., Compl. ¶¶ 22, 25-26, 32, 37). Plaintiff thus has pleaded sufficient facts to raise his right to relief under ADEA above a speculative level and to support a reasonable inference of age-based discrimination.

Defendant again argues in favor of a standard that would require "[p]laintiff . . .to set forth a prima facie case to support his ADEA discrimination claim," with reliance on state case law for the proposition that a plaintiff must make a prima facie showing in the complaint. (See Def.'s Mem. (DE 14) at 8 (citing, inter alia, Williams v. Devere Const. Co., 215 N.C. App. 135, 142 (2011))). As noted previously, however, "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss." McCleary-Evans, 780 F.3d at 584 (quoting Swierkiewicz, 534 U.S. at 515). The relevant inquiry, instead, is whether plaintiff has "allege[d] facts to satisfy the elements of an ADEA cause of action," Tickles, 805 F. App'x at 207 (quotation omitted), which the court concludes he has.

Defendant relies upon Wilson v. Nash Edgecombe Econ. Dev., Inc., No. 5:19-CV-322-FL, 2020 WL 5594538 (E.D.N.C. Sept. 18, 2020), for the proposition that "where employees fail[] to

allege any facts regarding their job performance and fail[] to allege different treatment of similarly situated employees outside the protected class," their ADEA claims are subject to dismissal under Rule 12(b)(6), "even where they allege[] in their complaint that their employer made numerous statements arguably demonstrating discriminatory intent." (Def.'s Mem. (DE 14) at 7). However, unlike Wilson, plaintiff has not "fail[ed] to allege a nexus between the statements and the employment decisions at issue," 2020 WL 5594538, at *10, because his complaint raises a reasonable inference of the causal connection between an age-discriminatory mindset in the relevant decision makers, (see, e.g., Compl. ¶¶ 25, 31-32), and the relevant employment decisions, including reallocation of job responsibilities, which was later, allegedly, used as pretext to fire plaintiff.[4]

Defendant also relies upon Clements v. Town of Sharpsburg, No. 5:18-CV-573-FL, 2019 WL 5079758 (E.D.N.C. Oct. 10, 2019). There, however, the court explained that plaintiff's allegation "that she 'continually and consistently performed all her duties for [d]efendant'" constituted a "vague statement" that failed to "give rise to a reasonable inference that defendant perceived plaintiff was performing her duties in a satisfactory manner." Clements, 2019 WL 5079758, at *3. Here, in contrast, plaintiff specifically alleges, that in the months leading up to his constructive discharge, his direct supervisor "told [p]laintiff on several occasions that he was satisfied with his work performance." (Compl. ¶ 38). The allegations in this case are thus instructively distinguishable from those in Clements.

In sum, this is not a case where specific allegations that would give rise to a reasonable inference of age-based discrimination" are "[n]otably absent from the [c]omplaint" and the court is

---

[4] Insofar as the court referenced elements of a prima facie case of age discrimination in Wilson, it did so as "part of the background against which a plausibility determination should be made," Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013), cited with approval by McCleary-Evans, 780 F.3d at 587, and which especially come to the forefront when a plaintiff argues that their claim is plausible under a prima facie framework. (See, e.g., Plaintiffs' Response at 11, Wilson, 2020 WL 5594538 (citing Westmoreland v. TWC Admin. LLC, 924 F.3d 718 (4th Cir. 2019))).

"left with mere speculation." Tickles, 805 F. App'x at 208.  Instead, as already noted, plaintiff has alleged sufficient factual matter above that "'merely consistent with' . . . defendant's liability" and rising to the level of a plausible entitlement to relief.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss is (DE 13) DENIED.  Pursuant to Rule 12(a)(4)(A), defendant's responsive pleading must be served within 14 days of this order.  Where the court has now entered decision on defendant's motion to dismiss, the court lifts the stay on the parties' scheduling conference activities established March 9, 2021.  Once defendant has served its responsive pleading as required herein, the clerk is DIRECTED to issue the court's initial order on planning and scheduling.

SO ORDERED, this the 3rd day of January, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge